# IN THE COURT OF APPEALS OF IOWA

No. 25-0798
Filed July 23, 2025

**IN THE INTEREST OF D.G., A.G., K.R., and M.R.,**
**Minor Children,**

**K.R., Mother,**
       Appellant,

**M.R., Father,**
       Appellant.

_____

Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

Judge.

Parents separately appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**

Jennie Wilson-Moore of Wilson Law Firm, Conrad, for appellant mother.

Jeffrey P. Hazen of Hitchins & Thronson, PLC, Marshalltown, for appellant

father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Mary Cowdrey, State Public Defender's Office, Marshalltown, attorney and

guardian ad litem for minor children.

Considered without oral argument by Schumacher, P.J., and Buller and

Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

The mother appeals the termination of her parental rights to her children, D.G. (born in 2011), A.G. (born in 2014), K.R. (born in 2018), and M.R. (born in 2019). The father appeals the termination of his parental rights to his children, K.R. and M.R. Upon our review, we affirm on both appeals.[1]

## I.      Background Facts and Proceedings

This family most recently became involved with the Iowa Department of Health and Human Services (the department) on a voluntary basis in 2021,[2] due to concerns of domestic violence between the parents, substance use, erratic and hostile behavior by the parents, unsanitary household conditions, lack of supervision, and other related issues. Family-preservation services were put in place, but the concerns worsened. The children were adjudicated in need of assistance. They were removed from the parents' custody in May 2023. They were placed in different foster homes. In July 2024, after neither parent made notable progress toward reunification, the State initiated termination-of-parental-rights proceedings.

The termination hearing took place over two days in February 2025. The department caseworker detailed the parents' "dishonesty" about their housing. They had "abandoned" their home in Liscomb after the children were removed. Eventually, the parents moved into a home in Waterloo. But they had at least one

---

[1] The parental rights of A.G.'s father were terminated in a separate order, which is not at issue here. D.G.'s father consented to the termination of his parental rights.
[2] But the department reported it had been involved with the family "off and on since 2012."

other person living there, in violation of the safety plan. They were evicted from the home in December 2024, due to nonpayment of rent.

Since then, the father had been living with his mother in a one-bedroom, low-income apartment. His mother was not allowed to have people stay with her "past two weeks" so he was "looking for a place." The father reported that he began a two-year program at a community college in January 2025. The department caseworker testified the father had been asked to drug test "over 26 times," which were all "no shows" except for three tests. The three tests the father completed were positive for methamphetamine, most recently in January. The father maintained he had not used since August 2024, explaining that he was exposed to methamphetamine by some acquaintances who were using. He requested "three to six months" additional time, explaining he could "voluntarily take parenting classes if I am not at college or I could engage in outpatient treatment." In the meantime, he believed the children should return to the mother's custody.

At the time of the termination hearing, it was unclear where the mother was living. She reported that after the eviction, she stayed in a hotel, then the father's mother's apartment, then back at the hotel. But her plan was to get a trailer with the father's education loan. Despite maintaining they had ended their relationship, the mother and father were often together.

The mother failed to appear for requested drug tests forty-six times. She participated in a sweat patch in September 2024 but failed to appear to have it removed. The mother completed a test in January 2025 that was negative for all substances. But the department caseworker felt the mother needed additional

time to show sobriety before the children could be safely returned. Aside from housing issues and substance use, concerns remained about the mother's mental health (which she had not addressed with any consistency) and domestic violence with the father. The mother reported incidents in which the father had "choked her out," held her down, and broken her nose. The children provided similar reports, and D.G. had intervened during such violent interactions.

The department and guardian ad litem recommended termination of parental rights.[3] Following the hearing, the court entered an order terminating the parents' rights under Iowa Code section 232.116(1)(f) (2024). They separately appeal.

## II. Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We give weight to, but are not bound by, the court's fact findings. *Id.*

In our review, we use a three-step analysis: first, determine if a ground for termination exists under Iowa Code section 232.116 paragraph (1); next, apply the best-interest framework from paragraph (2); and last, consider if any exceptions from paragraph (3) apply to preclude termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

---

[3] D.G., who was thirteen years old, also testified on behalf of her younger siblings. She stated, "I kind of like question myself why like it has to be so long . . . ." She then told the mother, "at the end of the day if you're generally doing it for your kids, for my sibling, make it seem that way. I guess don't wait until the end because it is not fair for my siblings."

## III.    Father's Appeal

The father claims termination of his parental rights is not in the best interests of K.R. and M.R.    Our best-interests framework considers "the child[ren]'s safety," "the best placement for furthering the long-term nurturing and growth of the child[ren]," and "the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted).  In addition to a myriad of other concerns, the most blatant reunification impediment the father faces is that he either missed drug tests or tested positive for methamphetamine throughout the entirety of this proceeding. He acknowledged his positive test in January 2025 but provided an unlikely explanation.  The department caseworker testified she did not believe the father was sober.  In any event, she opined that by this point in the proceeding, the father should have engaged in the necessary services to show he could achieve long-term sobriety.  Termination is in the children's best interests.

The father also claims that an additional six months would "allow [him] and his children to be reunified."  To grant an extension of time for reunification, the court must "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the children will be able to return to the parent at the end of the additional six months.  Iowa Code § 232.104(2)(b).  We note that the father had ten months between the permanency and termination hearings in which he could have shown the progress he suggested he could

achieve. The caseworker opined the father "has had more than enough time." He has not demonstrated the ability to maintain stable housing or sobriety in the community. On this record, the court had no basis to grant an extension.

## IV. Mother's Appeal

The mother's parental rights to the children were terminated pursuant to section 232.116(1)(f). This paragraph provides the juvenile court may terminate parental rights if all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

The mother does not challenge any of these elements. Instead, she claims she "maintained significant and meaningful contact with [the children], and her rights should not have been terminated." The mother's only claim relates to the final element of section 232.116(1)(e); accordingly, she has waived a challenge to the grounds for termination found by the court under section 232.116(1)(f). In any event, we conclude the court correctly determined the children could not be returned to the mother's custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "present time" to mean "at the time of the termination hearing"). The mother conceded that her children could not stay with her where she was currently living.

Because the children could not be returned to the mother's custody at the time of the hearing, section 232.116(1)(f) was satisfied.

The mother next argues termination is not in the children's best interests due to the bond she shares with them.[4] The caseworker testified the children share a bond with the mother and acknowledged the mother did most of the parenting during visits, often helping the father. However, the mother made many choices that were not in the children's best interests. For example, she failed to acquire adequate dental care for the children after being prompted to do so by the department, which resulted in the children's teeth rotting and having to be pulled. The mother also exposed the children to dangerous situations, substance use, unsanitary living conditions, and domestic violence. The court noted:

> The children are with multiple foster families but are safe. The foster families took action to fix the children's teeth. Their behaviors have noticeably improved over time with their parents. In order to further the long-term nurturing and growth of the children, their best placement is with an adoptive family/families instead of waiting for parental stability. The children's physical, mental, and emotional condition and needs can be best met by termination and adoption[.]

As noted above, the rule is well-established that, when the statutory grounds are otherwise satisfied, a mere hope that a parent will be able to someday provide a better home is not enough to withhold permanency. *A.M.*, 843 N.W.2d at 112. Although services were offered to the mother for many years, she did not make

---

[4] The mother does not separately claim her bond with the children should preclude termination pursuant to the permissive exception under section 232.116(3), so we analyze her claim only as a best-interests challenge. *See In re L.A.*, 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (en banc) ("We interpret the father's bond-based argument as a best-interests argument rather than a permissive-exception argument because his issue heading referenced only best interests and that is the thrust of his argument.").

meaningful progress to eliminate the reasons for the children's removal. Termination is in the children's best interests.

Finally, the mother claims the court "erred in bifurcating the termination hearings for [the parents] and for not granting the mother's motion to continue her portion of the hearing to coincide with the father's hearing."[5]  The State argues the mother failed to preserve error on this claim because even though she initially objected to the father's hearing being held separately, "she acquiesced and lodged no objection" when asked again.  We observe the same.  Specifically, at the outset of the first day, after the mother's objection, the court asked her attorney, "Wouldn't the court still be able to consider that fact [information about the parents' relationship] if it is raised here today by you and your client and raised at a future date [by the father]?"  The mother's attorney responded, "Absolutely," but she maintained concern about her ability to "put [her] client back up if we completely bifurcate these cases."  At the outset of the second day, the court asked the mother if it was "acceptable" for the court to consider the mother's case submitted, to which the mother's attorney agreed.  The mother's attorney was allowed to question witnesses on the second day of hearing, and the court's order terminating the parents' rights collectively discusses the evidence presented on both days of the hearing.

Even assuming the mother preserved this claim, she provides no authority to support it.  Accordingly, we deem the issue waived and will not consider it.  *See*

---

[5] The hearing began on February 4, at which time the court granted the father's motion to continue due to his attorney being ill and allowed the mother's case to proceed.  The remainder of the hearing took place on February 26.

Iowa Rs. App. P. 6.201(1)(d) (requiring petitions on appeal to "substantially comply with rule 6.1401—Form 5"), 6.1401—Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal: . . . Include supporting legal authority for each issue raised, including authority contrary to appellant's case, if known."); *In re A.T.*, No. 25-0119, 2025 WL 1085210, at *1 n.1 (Iowa Ct. App. Apr. 9, 2025).

Having addressed the issues properly before this court, we affirm the termination of the parents' parental rights to their children.

**AFFIRMED ON BOTH APPEALS.**